**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nathan Lukens, | No. CV 18-306-TUC-LAB |
| Plaintiff, | **ORDER** |
| vs. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

The plaintiff, Nathan Lukens, filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 14)

The Administrative Law Judge (ALJ) in this case found that Lukens is not disabled by using the testimony of a vocational expert. That testimony, however, was not consistent with the information contained in the Dictionary of Occupational Titles (DOT), and the ALJ failed to adequately resolve this inconsistency. Accordingly, this case is remanded for further proceedings.

PROCEDURAL HISTORY

In March of 2017, Lukens constructively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act. (Tr. 20) He alleged disability beginning on August 5, 2016, due to fibromyalgia, chronic post-traumatic stress disease (PTSD), Celiac

disease, right knee problem, insomnia, hearing issue (with associated skull implant), Barrett's syndrome (a disease of the esophagus), and gastroesophageal reflux (GERD). (Tr. 428, 434)

His application was denied initially and upon reconsideration. (Tr. 356-359); (Tr. 362-364) Lukens requested review and appeared without counsel at a hearing before Administrative Law Judge (ALJ) Laura Speck Havens on February 1, 2018. (Tr. 297) In her decision, dated February 26, 2018, the ALJ found Lukens was not disabled because, considering his age, education, work experience, and residual functional capacity, he could work as an addresser (DOT # 209.587-010), lens inserter (DOT # 713.687-026), or gauger (DOT # 712.687-018). (Tr. 20-34) A gauger sorts medical sutures.

Lukens requested review, but on June 4, 2018, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-4) Lukens subsequently filed this action seeking review of that final decision. (Doc. 1)

Claimant's Work History and Medical History

Lukens was 36 years old at the time of the hearing before the ALJ. (Tr. 299) He has a high school diploma and has attended two years of college. (Tr. 299)

Lukens was a soldier from 2000 to 2005 and from 2006 to 2010. (Tr. 302) He was a machine gunner and a truck driver. *Id*. He has a 90 percent disability rating from the VA resulting from what he calls Gulf War Illness. (Tr. 300)

In October of 2017, Lukens was examined by consulting physician Jeri B. Hassman, M.D., for the disability determination services. (Tr. 2714) Lukens reported "generalized aching pain all over his body," which is "especially bad in his upper back and shoulders and low back and in his feet and ankles. . . ." (Tr. 2715) Hassman diagnosed "allegation of fibromyalgia . . . Celiac disease . . . otoscherosis . . . allegation of right knee problems . . . history of PTSD [post-traumatic stress disease] . . . [and] allegations of Barrett's syndrome and GERD [gastroesophogeal reflux disease]. . . ." (Tr. 2717)

Hassman completed the social security administration form HA-1151-BK, Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 2718) She opined

that Lukens can lift or carry up to 10 pounds frequently and 20 pounds occasionally. (Tr. 2718) He can sit or stand for 30 minutes or walk for 15 minutes at one time. (Tr. 2719) He can sit for 6 hours, stand for 2 hours, or walk for 2 hours in an 8-hour work day. (Tr. 2719) He is limited to "occasionally" reaching "overhead" or in "all other" directions. (Tr. 2720) He is limited to occasionally pushing or pulling. (Tr. 2720)

At the hearing before the ALJ, Lukens testified that he lives with his wife and preschool children. (Tr. 303) He helps his wife with the household chores to some extent. (Tr. 303) He will "try" to mop, sweep, and fold clothes. (Tr. 303-304) He cooks once a week and helps with the grocery shopping. (Tr. 303-304) He eats a limited diet of oatmeal, rice, beans, and corn tortillas. (Tr. 308) He likes photography, but he must use a tripod because he cannot hold the camera. (Tr. 305) He reads nonfiction to distract himself from his pain. (Tr. 306)

Lukens feels a constant stabbing pain throughout his whole body averaging an 8 out of 10. (Tr. 310) He testified that he can stand for up to an hour at a time. (Tr. 309) He can walk for up to 20 minutes. (Tr. 309) He can sit for one hour. (Tr. 309) He can lift 10 to 15 pounds subsequent to shoulder surgery. (Tr. 309-310)

Sonia Peterson testified at the hearing as a vocational expert. (Tr. 313) She testified that "a person of the claimant's age, which is now 36, with a high school education and two years of college, and the same past relevant work, with the following additional restrictions present: The hypothetical person can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds; can sit for six hours out of an eight-hour day, stand for two hours out of an eight-hour day, walk for two hours out of an eight-hour day, requires a sit-stand option every 15 to 30 minutes, can occasionally climb stairs, ladders, balance, stoop, kneel, crouch, and crawl, *can reach overhead and all other reaching on an occasional basis bilaterally*, can occasionally push and pull with the upper extremities bilaterally, can frequently do gross handling and fine fingering bilaterally; can have no exposure to heights, moving machinery, humidity, temperature extremes, vibrations; can have only occasional exposure to dust, fumes and smoke; has mental restrictions of the following: can have only occasional interaction with coworkers, the public and supervisors" could not perform Lukens's past work but could work as an

- 3 -

1 addresser (DOT # 209.587-010), lens inserter (DOT # 713.687-026), or gauger (DOT # 712.687-018). (Tr. 316-317) (emphasis added) She further explained that "the jobs I gave are listed in the DOT as requiring frequent reaching." (Tr. 318) And, "the DOT doesn't specify in which direction the reaching is." (Tr. 318) "But in my experience . . . the jobs I gave *don't exceed occasional reaching overhead bilaterally*." (Tr. 318) (emphasis added) And "[n]one of the jobs require pushing or pulling." (Tr. 318)

## CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id*. If the ALJ concludes that the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Lukens "did not engage in substantial gainful activity during the period from his alleged onset date of August 4, 2016 through his date last insured of December 31, 2017. . . ." (Tr. 22)

At step two, she found Lukens had the following severe impairments through his date last insured: "fibromyalgia, Celiac disease, osteoarthritis, Barrett's syndrome, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), and bilateral hearing loss with bone conduction anchor on the right . . . ." (Tr. 23) (punctuation modified)

At step three, the ALJ found Lukens' impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 23)

The ALJ then analyzed Lukens' residual functional capacity (RFC). She found as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. The claimant requires a sit/stand option every 15-30 minutes. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. *The claimant can reach overhead and in all other directions on an occasional basis bilaterally.* He can occasionally push/pull with the bilateral upper extremities. The claimant can frequently handle (gross manipulation) and finger (fine manipulation) bilaterally. He should have no exposure to unprotected heights, moving machinery, humidity, temperature

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

- 5 -

>    extremes, and vibrations. He can have occasional exposure to dust, fumes, and smoke. The claimant can have frequent exposure to loud background noise. Mentally, the claimant can occasionally interact with coworkers, the public, and supervisors. "Occasional" is defined as very little to one-third of the time, "frequent" is defined as one-third to two-thirds of the time, and "never" or "no" is defined as no useful ability.

(Tr. 25) (emphasis added)

At step four, the ALJ found Lukens is unable to perform any past relevant work. (Tr. 32) At step five, the ALJ found, based on the testimony of the vocational expert, that, considering his age, education, work experience, and residual functional capacity, Lukens can work as an addresser (DOT # 209.587-010), lens inserter (DOT # 713.687-026), or gauger (DOT # 712.687-018). (Tr. 33-34)

STANDARD OF REVIEW

To qualify for disability benefits, the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The findings of the ALJ are meant to be conclusive. The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. *Orn*, 495 F.3d at 635 (punctuation modified). "However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Id.* "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id*. If the ALJ does not find "affirmative evidence" of malingering, "those reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.

Discussion

Lukens argues first that there is an unresolved discrepancy between the Dictionary of Occupational Titles (DOT) job description and the testimony of the vocational expert. He is correct; the case will be remanded. The court does not reach the claimant's alternate claims of error.

The ALJ found that Lukens has the residual functional capacity (RFC) to perform sedentary work with some limitations. Specifically, she found Lukens "can reach overhead and in all other directions on an occasional basis bilaterally." (Tr. 25) She included this limitation in her hypothetical question directed to the vocational expert at the hearing. The expert, however, proposed three jobs that, according to the DOT, require "frequent reaching" without further elaboration. (Tr. 318) The DOT does not state specifically how much reaching over head is required or how much reaching in other directions is required. (Tr. 318) The vocational expert explained this discrepancy by stating that "in my experience . . . the jobs I gave *don't exceed occasional reaching overhead bilaterally."* (Tr. 318) (emphasis added) She did not, however, explain how much reaching *in all other directions* these jobs require. *Id*. If these jobs require only occasionally reaching in all other directions, then the jobs comply with the ALJ's

RFC determination. But if these jobs require *frequent* reaching in all other directions, then Lukens cannot perform those jobs. There is an unresolved conflict between the DOT, which states that the three jobs require frequent reaching, and the testimony of the vocational expert, who states that a person with the RFC described by the ALJ can perform these three jobs. Accordingly, it is unclear whether the ALJ's finding at step five is supported by substantial evidence. Remand is warranted. *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (remanding where the ALJ failed to determine if there was a conflict between the DOT and the vocational expert's testimony and if so, "whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles.").

The Commissioner argues to the contrary that the vocational expert adequately explained the discrepancy. She maintains that expecting the vocational expert to differentiate between occasional overhead reaching and occasional reaching in all directions "holds vocational experts to a precision of language reserved for statutory drafting." (Doc. 21, p. 5) The court disagrees with the Commissioner's opinion of the linguistic precision to be expected from the vocational expert. *See also Biestek v. Berryhill*; 587 U.S. ___ , ___ (2019) (Vocational experts "must have expertise and current knowledge of working conditions and physical demands of various jobs . . . .") (punctuation modified).

In this case, the state disability determination service sent Lukens to be evaluated by the consulting physician, Jeri Hassman, M.D. (Tr. 2714) The service instructed Hassman to summarize her findings by completing the Social Security Administration (SSA) Form HA-1151-BK, Medical Source Statement of Ability to do Work-Related Activites (Physical). (Tr. 2718) This form distinguishes between "REACHING (Overhead)" and "REACHING (All Other)." (Doc. 2720) Apparently, the two types of reaching are sufficiently distinct in the eyes of the SSA that the claimant's physician is asked to evaluate the two activities separately. This being the case, the vocational expert should be able to differentiate between the two types of reaching in evaluating the activities required by a particular job. And she should be able to differentiate between the two activities when she testifies about that job's requirements.

The Commissioner argues in the alternative that the ALJ "is entitled to draw inferences logically flowing from the evidence." (Doc. 21, p. 5) And "[t]he ALJ is likewise responsible for resolving ambiguities." *Id*. But while all this is true, it does not excuse the ALJ's decision in this case. One cannot logically infer that a job that requires only occasional reaching overhead must also require only occasional reaching in all other directions. And while the ALJ is responsible for resolving ambiguities, she did not shoulder her responsibility to resolve this particular ambiguity.

In the alternative, the Commissioner argues that the vocational expert addressed this issue when she discussed the push-pull requirements. The vocational expert noted at the hearing that there was a discrepancy between the DOT and her testimony. She then stated that "in my experience . . . the jobs I gave don't exceed occasional reaching overhead bilaterally." (Tr. 318) And "[n]one of the jobs require pushing or pulling." (Tr. 318)

The Commissioner maintains that pushing and pulling necessarily entails reaching, and therefore by saying that the jobs do not require pushing or pulling, the vocational expert was necessarily saying that the jobs do not require reaching in other directions. The court remains unconvinced.

As the court explained above, the SSA has a form that is designed to quantify a claimant's ability to perform work-related activities. That form distinguishes between "REACHING (Overhead")" and "REACHING (All Other)." (Tr. 2720) It also distinguishes between the two forms of reaching and "PUSH-PULL." (Doc. 2720) The activities of reaching and push-pull are sufficiently distinct in the eyes of the SSA that the claimant's physician is asked to distinguish between limitations in reaching and limitations in the push-pull activity. This being the case, the vocational expert likewise should be able to differentiate between a reaching activity and a push-pull activity in evaluating the requirements of a particular job and in evaluating whether or not that job requires activities beyond the functional limitations of the hypothetical claimant described by the ALJ at the hearing. And when the vocational expert says one thing, the court cannot assume she meant another.

1  The Commissioner then directs the court to the DOT descriptions for the jobs of
2  addresser, lens inserter, and gauger. Accordingly to the DOT, "[a]n addresser uses his or her
3  hands to address items, such as envelopes." (Doc. 21, p. 7) "The job of gauger involves sorting
4  and measuring surgical sutures." *Id*. "A lens inserter fits lenses into plastic sunglass frames and
5  places frames on conveyor belt." *Id*. (punctuation modified) From these "short and simple"
6  descriptions, the Commissioner argues, it is "clear that these jobs do not entail regular
7  movements of the worker's arms in all directions." (Doc. 21, pp. 7-8); *see, e.g.*, *Gutierrez v.
8  Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) ("But anyone who's made a trip to the corner grocery
9  store knows that while a clerk stocking shelves has to reach overhead frequently, the typical
10 cashier never has to."). The court does not agree.

All of these jobs entail getting certain supplies, manipulating them, and then disposing of the finished product. The addresser must get the envelopes and the address labels (or pen); the gauger must get the surgical sutures and the measuring tool; the lens inserter must get the lenses and the sunglass frames. And while it is possible that these supplies drop from the ceiling into the worker's lap, it seems likely that the worker must *reach out* to retrieve them from a bin or drawer. Once the operation is complete, the worker must dispose of the finished item. And while it is possible that the worker drops the finished product down a hole in the floor, it seems likely that the worker must *reach out* to put the finished item in another bin or, as explicitly stated for the lens inserter, onto a conveyer belt. The court cannot infer from the DOT's description of these three jobs that they do not require frequent reaching in all directions. *See, e.g., Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) ("Of course, the requirement for an ALJ to ask follow up questions is fact-dependent, and the more obscure the job, the less likely common experience will dictate the result.") (punctuation modified).

The court finds that final decision of the Commissioner in this case is not supported by substantial evidence.

IT IS ORDERED that the final decision of the Commissioner is reversed and the case is remanded for further proceedings.

DATED this 8th day of April, 2019.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge